Troy P. Foster #017229
**The Foster Group, PLLC**
518 East Willetta Street
Phoenix, Arizona 85004
Tel: 602-461-7990
tfoster@thefosterlaw.com
*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| KARI DART, on Behalf of Herself and Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> LABRAD DIAGNOSTICS, a corporation, SPSAZ ENTERPRISES, LLC, a foreign corporation, SAM AKERS, an individual, and MELODIE JULIAN, an individual, <br><br> Defendants. | Case No.: <br><br> **COMPLAINT** <br><br> **(Jury Trial Demanded)** |

Plaintiff Kari Dart alleges as follows:

**Background Allegations and Jurisdiction**

1. At all times relevant to this Complaint, Plaintiff resided in and is a citizen of the State of Arizona.

2. At all times relevant to this Complaint, LABRAD DIAGNOSTICS ("the Company") was a Corporation authorized to conduct, and conducting business, in the State of Arizona.

3. The Company provides remote lab services, including phlebotomy and sample delivery, for doctors' offices and other medical facilities, and their patients throughout Arizona.

4. The Company's Arizona headquarters is in Tempe, Arizona.

1

5. The Company also provides these services throughout the State of Texas.

6. Upon information and belief, the Company also provides these services throughout other states throughout the United States.

7. At all times relevant to this Complaint, Defendant SPSAZ Enterprises, LLC, a Delaware corporation, owned and operated the Company.

8. At all times relevant to this Complaint, Sam Akers was the member-manager of the Company.

9. At all times relevant to this Complaint, Defendant Melody Julian was the Arizona-based manager for the Company.

10. The Individual Defendants, as well as other yet unnamed managers, exercise managerial responsibility and substantial control over the terms and work conditions of the Company's employees. Among other things, the Individual Defendants are individually and jointly authorized to hire and fire employees, supervise and control employee work schedules and conditions of employment, determine the rate and method of payment, maintain any employment records that may exist, and draft, implement, and enforce employee policies.

11. Plaintiff Kari Dart was an employee of the Corporate Defendant from March 2019 until June 2019 as a mobile phlebotomist.

12. During that time, the Corporate Defendants provided Plaintiff with a regular schedule of work to be done, a training, and supplies for all work to be completed.

13. During her employment, Plaintiff could not provide services to another company due to her full-time work with Defendants.

14. Plaintiff's duties were essential to, and within the same industry, as Corporate Defendants' business.

15. At all times relevant to this Complaint, the Corporate Defendant misclassified Plaintiff as an independent contractor.

16. The prospective Class Members that Plaintiff would represent are current and former mobile phlebotomists employed by Corporate Defendant for any time during June 2017 to present ("Violative Period").[1]

17. The prospective Class Members were employed by the Corporate Defendant throughout Arizona and across the United States.

18. At all times relevant to this Complaint, the Corporate Defendant has employed all prospective Class Members in the role of mobile phlebotomists during the Violative Period.

19. The Corporate Defendant is an employer as defined in 29 U.S.C. § 203(d).

20. The Individual Defendants are "persons" as defined in the respective federal and state wage laws.

21. The Corporate Defendant is an employer as defined in A.R.S. § 23-350(3).

22. Plaintiff and each prospective Class Member were Defendants' employees as defined in 29 U.S.C. § 203(3)(1).

23. Plaintiff and each prospective Class Member were engaged in commerce on behalf of Defendant, as defined in the Fair Labor Standards Act ("the Act"). *See* 29 U.S.C. § 203(b); *see also* 29 C.F.R. § 776.9 ("[i]t is clear that the employees covered by the wage and hour provisions of the Act as employees 'engaged in commerce' are employees doing work involving or related to the movement of persons or things . . . among the several states or between any State and any place outside thereof.").

24. Defendant is not exempt from paying Plaintiff and each prospective Class Member for work performed as required by the Act.

25. Jurisdiction and venue are appropriate in this Court.

**General Factual Allegations**

26. The Corporate Defendant's operations across Arizona and Texas, and upon information and belief several states throughout the United States, provide mobile

---

[1] Because of the misclassification and for ease of reference, the Complaint refers to the mobile phlebotomists as employees throughout.

laboratory services to doctors' offices, hospitals, and other medical facilities, and their respective patients.

27. The Corporate Defendant has customers from states outside of Arizona and traveling to/from/through Arizona to other states.

28. As part of that service, Defendants employ non-exempt mobile phlebotomists.

29. Upon information and belief, Defendants have employed approximately 200 mobile phlebotomists during the Violative Period.

30. As mobile phlebotomists, Plaintiff, and each prospective Class Member, were/is non-exempt employees for Defendants.

31. Throughout all times relevant to this Complaint, Defendants misclassified its employees as independent contractors.

32. Regardless of their status, Defendants failed to pay Plaintiff, and each prospective Class Member, for work performed.

33. All mobile phlebotomists are/were required to track the hours worked, report those hours to Defendants, as well as jobs completed.

34. Defendants provide Plaintiff, and each prospective Class Member, with the supplies required to perform the services for Defendants' clients.

35. Defendants provide Plaintiff, and each prospective Class Member, with regular full-time shifts and schedules and Company protocols to follow.

36. Defendants have a significant degree of control over Plaintiff, and each prospective Class Member.

37. Plaintiff, and each prospective Class Member, were/are required to track her travel time to a job site.

38. That time was tracked on a Company time sheet/invoice.

39. Plaintiff, and each prospective Class Member, were/are not paid for the hours worked and tracked. Rather, the Company purported[2] to pay Plaintiff, and each prospective Class Member, a flat fee for each "draw" and delivery.

40. The Company purported to pay Plaintiff, and each prospective Class Member, for all expenses incurred as a result of the work performed for Defendants.

### Allegations Regarding Unpaid Work

41. Plaintiff, and each prospective Class Member, performed work for Defendants.

42. Defendants agreed to pay Plaintiff, and each prospective Class Member, for the work performed.

43. Defendants agreements to pay were in multiple written communications, contracts, and conversations with Plaintiff, and each prospective Class Member.

44. Defendants reaffirmed their obligations to Plaintiff, and each prospective Class Member, in text messages to Plaintiff. *See* Text Messages from Defendants, attached as Exhibit 1.

45. Defendants failed to pay Plaintiff, and each prospective Class Member, the monies promised for the work performed.

46. Several reviews about the Company on various social media platforms consistently represent that Defendants "do not pay their employees" and warn applicants not to apply. *See, e.g.,* www.glassdoor.com/Reviews/LabRad-Diagnostics-Reviews-E2070826.htm.

### Allegations Regarding Misclassification

47. Plaintiff realleges paragraphs 1-46 as if fully set forth here.

48. Defendants exerted substantial control over Plaintiff's, and each prospective Class Member's, work schedules, paid for and/or provided its supplies, provided a training, and had schedules that prohibited employment at other entities.

---

[2] As outlined in allegations that follow, Defendants failed to pay Plaintiff, and each prospective Class Member, for a majority of work performed regardless of the misclassification.

49. Plaintiff's, and each prospective Class Member's, work was/is essential to the deliver of Defendants' services within the same industry.

50. Plaintiff, and each prospective Class Member, was/is required to track time worked, mileage driven, and jobs completed.

### Allegations Regarding Uncompensated Time

51. Plaintiff realleges paragraphs 1-50 as if fully set forth here.

52. Plaintiff, and each prospective Class Member, was not compensated for all time worked.

53. Plaintiff worked more than 40 hours most weeks.

54. Upon information and belief, most prospective Class Members worked more than 40 hours most weeks.

55. Plaintiff, and each prospective Class Member, was not compensated for overtime regardless of the number of hours worked.

56. All of the work performed by Plaintiff, and each prospective Class Member, was to benefit Defendants.

57. The uncompensated time benefitted Defendants to Plaintiffs' detriment.

### Allegations Regarding Defendants' Willful Violation and Retaliation

58. Plaintiff realleges paragraphs 1-57 as if fully set forth here.

59. Plaintiff, and various Class Members, complained to Defendants about not being lawfully compensated.

60. In response, Defendants acknowledged the failure and reaffirmed its obligations with additional promises to pay Plaintiff, and various prospective Class Members.

61. Defendants failed to pay, despite these promises and legal obligations.

### Collective Action and Class Allegations

62. Plaintiff brings this Class Action/Collective Action on her own behalf, and pursuant to Federal Rules of Civil Procedure, Rules 23(a), (b)(2) and (b)(3) and Section

6

216(b) of the Act, on behalf of the following prospective Class Members ("Class Members").

63. The Class is initially defined as: any current or former employee of Defendants engaged as a mobile phlebotomist/courier from January, 2017 to date of filing.

64. *Numerosity – Fed. R. Civ. P. 23(a)(1).* The number of Class Members is so numerous that joinder of all individuals to a single complaint would be impractical. Though the exact number of Class Members is unknown and in complete control of Defendants, based upon the number of sites across the country and number of front-line employees in these roles at any one time, it is reasonable to believe that there are a minimum of 200 prospective Class Members. The Class Members are readily identifiable from Defendants' employment, "independent contractor," and payroll records.

65. *Commonality and Predominance – Fed. R. Civ. P. 23(a)(2) and (b)(3).* There are questions of law and fact common to all Class Members. These common questions include, but are not limited to:

   a. Did Defendants misclassify the mobile phlebotomists?
   b. Did Defendants fail to pay Class Members for hours worked?
   c. Regardless of classification, did Defendants fail to pay Class Members for work performed?

66. *Typicality – Fed. R. Civ. P. 23(a)(3).* Plaintiff's claims are typical of all other Class Members. Plaintiff, like all other Class Members, was a mobile phlebotomist that performed work for Defendants and was compensated/uncompensated in the same manner as others similarly situated.

67. *Adequacy of Representation – Fed. R. Civ. P. 23(a)(4).* Plaintiff will fairly and adequately represent the Class Members. Plaintiff worked for Defendants during the Violative Period and has significant documentation of the Defendants' promises, failures, and the pattern of the same; Plaintiff has the same non-conflicting interests as the other Class Members. Plaintiff has retained competent counsel that has experience in litigating Class Action and Collective Action matters, including certified Class

Actions that involve employment and commercial litigation claims, including wage and hour matters. As such, the Class Members' claims will be fairly and adequately represented by Plaintiff and her counsel.

68. *Superiority of Class Action – Fed. R. Civ. P. 23(b)(3).* A class action is superior to other available methods for adjudicating the claims effectively and efficiently. The adjudication through class will avoid potentially inconsistent and conflicting results of the asserted claim. There will be no difficulty in managing the Class, and a single adjudication of the claim will substantially benefit the Class Members and the Court. Damages for individual Class Members are likely inadequate to justify the cost of individual litigation. As such, absent class treatment, Defendants' willful violations of law inflicting significant damages in the aggregate would go unremedied.

69. Class certification is also appropriate under *Fed. R. Civ. P. 23(a) and (b) (2)* because Defendants have acted or refused to act on grounds generally applicable to the Class Members, such that final injunctive relief or declaratory relief is appropriate to the Class as a whole.

70. For all of the reasons outlined above, this matter could also be conditionally certified as a Collective Action pursuant to Section 216(b) of the Act.

**Count One:  Violation of FLSA and State Laws (Minimum Wage/Overtime)**
**(Against All Defendants)**

71. Plaintiff realleges paragraphs 1-70 as if fully set forth here.

72. Defendants failed to pay Plaintiff, and prospective Class Members, for work performed during the Violative Period in violation of the Act.

73. Defendants required Plaintiff, and prospective Class Members, to work significant hours without any compensation to its financial benefit and to Plaintiff's detriment.

74. In failing to pay Plaintiff, and each prospective Class Member, an hourly rate, Defendants failed to compensate for overtime worked.

75. Defendants failed to pay Plaintiff and prospective Class Members the federal minimum wage.

76. Defendants' failures were willful.

77. Plaintiff, and each prospective Class Member, is entitled to recover all unpaid wages, liquidated damages in an amount equal to the unpaid wages, reasonable attorneys' fees, and costs of the action.

### Count Two:  Breach of Contract/Unjust Enrichment (Against All Defendants)

78. Plaintiff re-alleges paragraphs 1-77 as if fully set forth here.

79. In the alternative to Count One, Defendants engaged in a practice to breach contracts with Plaintiff, and each prospective Class Member.

80. Defendants agreed to pay Plaintiff, and each prospective Class Member, for work performed.

81. Defendants reaffirmed those obligations to Plaintiff.  *See* Exhibit 1.

82. Defendants breached their duty and contractual obligation to Plaintiff, and each prospective Class Member.

83. Plaintiff, and each prospective Class Member, was damaged as a result of Defendants' breached.

84. Defendants failed to pay Plaintiff $14,000 owed under the contract, and consequential damages resulting from the breach.

85. Upon information and belief, Defendants failed to pay each prospective Class Member in the same manner with varying amounts.

86. Plaintiff, and each prospective Class Member, is entitled to recover all amounts due for the respective breaches of contracts, consequential damages for the same, and reasonable attorneys' fees and costs of the action.

### Conclusion

**THEREFORE**, Plaintiff, and each prospective Class Member, respectfully requests the following relief:

A. An award of unpaid wages in an amount appropriate to proof adduced at trial pursuant to 29 U.S.C. § 207 and 216(b), and A.R.S. §§ 23-355 and 23-362.

B. An award of liquidated damages in an amount appropriate to the proof adduced at trial pursuant to 29 U.S.C. § 216(b);

C. Statutory penalties for willful violations of 26 U.S.C. § 7434;

D. Punitive damages and attorneys' fees and costs pursuant to 29 U.S.C. § 216(b), A.R.S. § 23-355, and/or A.R.S. § 12-341;

E. An award of treble damages pursuant to A.R.S. § 23-355;

F. Pre- and post-judgment interest on the amount of unpaid wages; and

G. An Injunction against Defendants prohibiting further, and continued violations, of the Act and Arizona Fair Wages Act.

**DATED** this 21th day of August, 2019.

**The Foster Group, PLLC**

*/s/ Troy P. Foster*
Troy P. Foster
518 East Willetta Street
Phoenix, Arizona 85004
*Counsel for Plaintiff*